**EXHIBIT 1**

| STATE OF MICHIGAN<br>3rd JUDICIAL CIRCUIT<br>COUNTY OF WAYNE | VERIFICATION OF<br>BUSINESS COURT ELIGIBILITY<br>AND NOTICE OF ASSIGNMENT | CASE NO.<br>2026 -          - CB |
|---|---|---|

Court address: 2 Woodward Ave., Detroit, MI 48226

| Plaintiff(s)<br>EWC MICHIGAN MANAGEMENT, INC. | v | Defendant(s)<br>EWC FRANCHISE, LLC |
|---|---|---|

I am the attorney for the [check one] ☑ plaintiff ☐ defendant and per *MCR 2.114(B)(2) and MCR 2.114(D)* declare to the best of my information, knowledge, and belief that this case meets the statutory requirements to be assigned to the business court, *MCR 2.112(O),MCL 600.8031 et seq.*, and request assignment to the Business Court for the following reasons:

**[*Both Sections 1 and 2 must be completed to be accepted by the Court (check all that apply)*]**

1. **Parties**. This is a qualifying business or commercial dispute as defined by *MCL 600.8031(1)(c)* because,

☑ all of the parties are business enterprises

☐ one or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships

☐ one of the parties is a non-profit organization, and the claims arise out of that party's organizational structure, governance, or finances

☐ It is an action involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

**AND**

2. **Actions**. This business or commercial action as defined by *MCL 600.8031(2)* involves,

☐ information technology, software, or website development, maintenance, or hosting

☐ the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers

☑ contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including but not limited to, alternative dispute resolution processes prescribed in the agreements

☐ commercial transaction, including commercial bank transactions

☐ business or commercial insurance policies

☐ commercial real property

☐ other type of business or commercial dispute (explain):

| March 31, 2026 | Mark Vanneste | Digitally signed by Mark Vanneste<br>Date: 2026.03.31 14:15:28 -04'00' |
|---|---|---|
| Date | Signature | |
| | Mark C. Vanneste | P73001 |
| | Name (type or print) | Bar no. |

Yolanda Payne   3/31/2026 4:36 PM   WAYNE COUNTY CLERK   Cathy M. Garrett   IN MY OFFICE   FILED   26-005373-CB

STATE OF MICHIGAN
IN THE WAYNE COUNTY CIRCUIT COURT

EWC MICHIGAN MANAGEMENT, INC.,

        Plaintiff,

v.

EWC FRANCHISE, LLC,

        Defendant.

Case No. 2026 -      - CB
Hon.

---

HOWARD & HOWARD ATTORNEYS PLLC
By:   Jon R. Steiger (P35505)
      Mark C. Vanneste (P73001)
450 W. 4th Street
Royal Oak, MI  48067
(248) 645-1483
mv@h2law.com

*Attorneys for Plaintiff*

STONE JUSTICE PC
By:   Erik J. Stone (P29088)
P.O. Box 1
416 N. Third Street
Rogers City, MI 49779
(248) 990-1779
erik@stonejustice.com

*Co-Counsel for Plaintiff*

---

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action previously been filed and dismissed or transferred after having been assigned to a judge.

This action involves a business or commercial dispute under MCR 2.112(O) and meets the statutory requirements to be assigned to the Business Court pursuant to MCL 600.8031.

## **VERIFIED COMPLAINT**

### **INTRODUCTION**

1.     This is a case involving an imminent threat by Defendant EWC Franchise, LLC ("EWCF"), the franchisor, to improperly terminate a franchise being operated by Plaintiff EWC Michigan Management, Inc. ("EMMI") by disabling the systems necessary to operate the business maintained by the franchisor (the "Zenoti" platform).  Plaintiff has followed the modified procedures in the franchise agreement Plaintiff to renew the franchise for a period of ten years.

1

Defendant franchisor disputes the renewal has occurred and instead of resolving the dispute through arbitration as the franchise agreements provides, has threated to close the business by denying the franchisee access to the Zenoti platform after April 9, 2026.

2. The franchisor EWCF notified the franchisee EMMI that it will disable EMMI's Zenoti platform on April 9, 2026, even though EWCF itself acknowledged and acted consistently with EMMI's request for renewal.

3. Zenoti is the franchisor-controlled, centralized operating platform that manages all appointment scheduling, payment processing, and customer data for the franchise, and because the franchisor controls access to it, unilaterally shutting it down immediately prevents the franchisee from conducting any core business functions, effectively forcing the business to cease operations. As set forth in the Affidavit of Farzana Khan (*See*, Ex. A), without Zenoti, the business cannot function and must be shut down.

4. The harm that would be caused by shutting down Zenoti is not speculative. EWCF has already used this same tactic at a related franchise, the West Bloomfield location, where it cut off Zenoti, removed the business from the corporate website indicating that it was "permanently closed," and preventing customer appointments, effectively destroying that business.

5. The Franchise Agreement does not permit termination through operational shutdown. Instead, the agreement requires notice and an opportunity to cure before termination and arbitration of disputes.

6. EMMI seeks injunctive relief to prevent EWCF from accomplishing through system shutdown what it cannot lawfully accomplish under the contract.

7. The franchisor has refused EMMI's request that the parties agree to a standstill agreement preserving the current operational status quo while this dispute is resolved.

## THE PARTIES, JURISDICTION, AND VENUE

8.      Plaintiff EMMI is a corporation organized under the laws of Michigan that conducts business in Canton, Michigan in Wayne County.

9.      Defendant EWCF is a Florida limited liability company that conducts business in Wayne County, Michigan.

10.     Jurisdiction is proper in this Court, because the amount in controversy far exceeds the Court's jurisdictional threshold of $25,000, and because EMMI seeks equitable relief.

11.     Venue is proper in this Court because the acts and occurrences giving rise to Plaintiff's claims all occurred in Wayne County and the Defendants conduct regular and systematic business in Wayne County.

12.     Moreover, the Michigan Franchise Investment Law voids and makes unenforceable any provision in a franchise agreement that requires that arbitration or litigation be conducted outside the State of Michigan. *See*, MCL 445.1526.

## GENERAL ALLEGATIONS

13.     EMMI operates a European Wax Center franchise in Canton, Michigan (the "Canton Store") pursuant to a Franchise Agreement with EWCF. *See*, Ex. B – Franchise Agreement.  The Canton Store is a fully operating, customer-facing business that serves as EMMI's sole source of income (and that of EMMI's sole shareholder) and supports employees, vendor relationships, and long-term lease obligations.

14.     EMMI's sole shareholder, Farzana Khan, acquired the business at extraordinary personal financial risk, including over $1.2 million in combined debt, cash investment, and personal guarantees.  She continued operating the business through the COVID period, took on

3

additional debt to sustain it, and ultimately transformed it into a highly successful locations generating approximately $1.9 million in revenue annually.

15.     The Franchise Agreement defines the franchise as the right to operate a European Wax Center using the franchisor's System and Marks and the right granted to EMMI by EWCF to use the System and the Marks for the operation of the Canton Store.

16.     Zenoti is part of the System.  Without access to it, EMMI cannot operate the franchise at all.

17.     The Franchise Agreement has an original term of ten years from the Effective Date, which was May 13, 2015 (the "Term"), and allows for a renewal for one (1) ten-year renewal period, which is defined as a Successor Franchise.  *Id*. at Preamble and § 4.

18.     The Franchise Agreement gives EMMI "the right to obtain one (1) Successor Franchise at the expiration of the Term by entering into a new franchise agreement with Franchisor." *Id*.

19.     With regard to notice, the Franchise Agreement requires that EMMI give "written notice of its intent to operate a Successor Franchise not less than nine (9) nor more than twelve (12) months prior to the end of the Term.  *Id*.

20.     On September 9, 2024, EWCF, via Meredith Tillery, its legal coordinator, emailed EMMI the following:

> Sent: Monday, September 9, 2024 3:09 PM
> To: farzana khan <farzana.khan@waxcenter.com>
> Cc: Todd Cherry <Todd.Cherry@myewc.com>; Joyce Wrigley <joyce.wrigley@myewc.com>
> Subject: Extension of Initial Term I Short-Term Extension Agreement - EWC Michigan Management, Inc.
>
> Dear Farzana,
>
> As you know, the Initial Term of the Franchise Agreement for the location identified above previously expired (or will expire soon), and EWC has not yet had an opportunity to have you sign the Successor Franchise Agreement for this location.

4

As we work through the backlog of renewals over the coming months, we would like to ensure that the location identified above has an active Short-Term Extension Agreement in place.

Accordingly, after receiving this email, you will receive a second email from DocuSign prompting you to e-sign the attached Short-Term Extension Agreement, which serves to extend (or further extend, as applicable) the Initial Term of the Franchise Agreement through December 31, 2025.

**As noted above, EWC is currently working to address the backlog with renewals, so you will receive additional information regarding the steps that will need to be completed in order to sign the Successor Franchise Agreement for this location at some point in the coming months.**

If you have any questions about the attached Short-Term Extension Agreement, please let me know. Otherwise, I will send a copy of the fully executed Short-Term Extension Agreement to you via email once the DocuSign has been completed.

Thank you,

MEREDITH TILLERY
LEGAL COORDINATOR

*See*, Ex. C – September 9, 2024 Email, emphasis added.

21.     After indicating on September 9, 2024 that EWCF was "currently working to address the backlog with renewals," and that EMMI would "receive additional information regarding the steps that will need to be completed in order to sign the Successor Franchise Agreement for this location at some point in the coming months," Ms. Tillery acknowledged having the fully executed Short-Term Extension Agreement via email to EMMI on October 1, 2024. *Id.*

22.     At some point thereafter, EMMI was asked to register its intent to renew the franchise on an electronic registry maintained by EWCF, which EMMI did.  *See*, Ex. A at ¶ 6.

23.     On March 13, 2025, EWCF, via Michelle Reap, its Director of Franchise Sales, emailed EMMI to indicate that she was contacting EMMI "to review your centers, confirm the details, and collect the necessary documentation to complete the renewals." *See*, Ex. D.

24.     A meeting occurred on March 24, 2025 at which time EWCF, via Ms. Reap, discussed the revised renewal process and at which time EMMI again affirmed its intent to renew.

25.     On November 11, 2025, EWCF, via Patricia Halpin, its Sr. Director of Franchise Sales and Business Development, emailed EMMI to schedule a call to discuss the West Bloomfield Store lease and franchise agreement.  *See*, Ex. E.

26.     On or around December 9, 2025, EWCF, via Kurt Smith, its Chief Development Officer, notified EMMI that Ms. Halpin had left the company and that Ms. Reap would take her place. *See*, Ex. A at ¶ 11.

27.     At no time during any of these communications did EWCF indicate that the Successor Franchise renewal would not be granted.  To the contrary, EWCF repeatedly represented that the Successor Franchise would be granted and that any delay in providing EMMI with a Successor Franchise agreement was due to its own "backlog."

28.     EMMI timely expressed its intent to renew the franchise agreements.  EWCF did not reject that request.  Instead, EWCF acknowledged that it had not yet processed renewal agreements due to backlog and represented that EMMI would continue operating during the renewal process, which remains ongoing.

29.     EMMI reasonably relied on EWCF's conduct and representations.  In reliance, EMMI continued operating the business, retained employees, and extended its lease for the Canton Store through May 2030.

30.   Suddenly and without warning on January 7, 2026, EWCF, via Kurt Smith, its Chief Development Officer, contacted EMMI via telephone and informed EMMI that EWCF was closing the EMC West Bloomfield Store.  *See*, Ex. A at ¶ 12.

31.   On January 8, 2026, counsel for EWCF sent correspondence to EMMI indicating the Term had expired, that EMMI's renewal rights had somehow expired, and that EWCF "will be disabling all vendor services and accounts associated with the Franchised Center following distribution of this letter."  *See*, Ex. F.

32.   In other words, EWCF unilaterally shut down the EMC West Bloomfield Store with one day notice and based EWCF's assertion that the Term had expired, which is contradicted by EWCF's prior conduct and representations that the renewal process was underway and EWCF was simply working through the "backlog."

33.   Nothing in the communications and correspondence on January 7 and 8, 2026 made any reference at all to the Canton Store.

34.   Then, again suddenly and without warning, on January 16, 2026, EWCF sent a letter to EMMI indicating that the Term had expired on December 31, 2025, that EMMI's renewal rights of this location had expired as well, and that it intended to also shut down the Canton Store. *See*, Ex. G.

35.   This time, EWCF offered to keep providing to EMMI the systems necessary to maintain the business until March 31, 2026, if EMMI signed a so-called short-term extension agreement that would have waived all EMMI's claims against EWCF arising because of EWCF's unlawful conduct.

36.   EMMI reasonably relied on EWCF's multiple representations regarding EWCF's knowledge of EMMI's intent to renew EWCF' modification of the renewal process.  Only after

7

that reliance occurred did EWCF abruptly reverse course and claim that EMMI's renewal rights had expired. EWCF relied on alleged technical deficiencies, including failure to provide written notice of an intent to renew and failure to execute a successor franchise agreement, both requirements that had been waived or modified by EWCF's own conduct and representations.

37. For example, EWCF acknowledged EMMI's intent to renew multiple times and informed EMMI that a Successor Franchise agreement would be delivered once EWCF worked through the "backlog" of renewals. Likewise, the alleged failure to execute a Successor Franchise agreement exists only because EWCF never provided such an agreement, despite representing that it would.

38. EWCF never provided any previous notice or provided any cure period as allowed by the Franchise Agreement.

39. Instead, EWCF now seeks to accomplish termination through system shutdown.

40. On March 6, 2026, counsel for EMMI requested that EWCF simply enter into a "standstill" agreement so that the Canton Store was able to continue business operations beyond March 31, 2026 while the parties worked toward some resolution.

41. On March 8, 2026, EWCF's counsel responded to the request to enter into a "standstill" agreement by ignoring that request and, instead, indicating that it will disable Zenoti on March 31, 2026, effectively shuttering the Canton Store as it did to the West Bloomfield Store.

42. On March 25, 2026, after Ms. Khan had attended a conference for EWC franchisees, EWCF emailed to offer an "extension" to April 9, 2026 (effectively an additional eight days), to sell the franchise – an obviously impossible task.

43. The harm that will occur after April 9, 2026 is immediate and irreparable should EWCF not be enjoined from shutting down the business. EMMI will lose its customer goodwill

8

customer base, employees, and financial viability, and will eventually default on approximately $1.2 million in personally guaranteed obligations.

44. The Franchise Agreement as amended includes an arbitration provision requiring that "…all disputes arising out of or relating to this Agreement or to any other agreements between" the parties are to be submitted to binding arbitration. *See*, Ex. B at ¶ 23.7.

45. EWCF's unilateral action to disable systems and accounts, effectively terminating EMMI's business, deprives EMMI of the dispute resolution mechanism purportedly required by EWCF's own Franchise Agreement as amended.

**COUNT I:**
**BREACH OF CONTRACT**

46. EMMI incorporates the foregoing allegations as if incorporated herein.

47. The Franchise Agreement as amended is a valid and enforceable contract governing the relationship between the parties.

48. Under the Franchise Agreement, EMMI is entitled to one (1) ten-year renewal period, which is defined as a Successor Franchise. *Id*. at § 4.

49. While the Franchise Agreement's original terms required EMMI to provide written notice of its intent to operate a Successor Franchise and to enter into a new franchise agreement with EWCF, those terms were amended and modified by EWCF's representations to EMMI and by EWCF's conduct.

50. Pursuant to well-established Michigan law, a contract can be modified by mutual assent, express or implied. "Parties to a contract are free to modify the contract by mutual assent." *Quality Products & Concepts Co v Nagel Precision, Inc*. 469 Mich 362, 372 (2003). Michigan courts recognize that a contract may be modified by the parties' conduct, even without express words of modification. "A contract may be modified by subsequent agreement of the parties,

9

either express or implied and the modification may be established by clear and convincing evidence." *Id*. at 372-373.

51.     EWCF breached the Franchise Agreement as amended, *inter alia*, by unilaterally disabling all vendor services and accounts previously provided to the West Bloomfield Store, effectively and immediately, shutting down the business, by failing to provide notice of any purported default or allowing EMMI to cure same, attempting to terminate the Canton Store in the same way, and denying EMMI its right to a Successor Franchise.

52.     EWCF's multiple breaches of the Franchise Agreement have proximately and directly caused EMMI significant damages.

**COUNT II:**
**PROMISSORY ESTOPPEL**

53.     EMMI incorporates the foregoing allegations as if incorporated herein.

54.     EWCF made clear and definite representations and promises to EMMI that EMMI's intent to renew had been acknowledged, that the renewal was in process, and that EMMI could continue operating during that process while EWCF worked through its "backlog" of renewals.

55.     EWCF reasonably expected EMMI to rely on those representations and promises.

56.     EMMI did rely on those representations and promises by continuing operations, retaining employees, and extending its lease and such reliance was foreseeable.

57.     EMMI suffered substantial detriment because of its reliance on EWCF's representations and promises.

58.     Injustice can be avoided only by enforcing EWCF's promises or preventing EWCF from repudiating them.

**COUNT III:**
**VIOLATION OF THE MICHIGAN FRANCHISE INVESTMENT LAW**

10

59. EMMI incorporates the foregoing allegations as if incorporated herein.

60. EWCF is a franchisor and EMMI is a franchisee under the Michigan Franchise Investment Law, MCL 445.1501, et seq.

61. EWCF engaged in unfair and deceptive practices by inducing EMMI to continue operating under the belief that renewal would occur and then arbitrarily refusing renewal.

62. EWCF's conduct constitutes bad-faith nonrenewal in violation of MCL 445.1527.

63. EWCF failed to provide appropriate written notice of cause to terminate EMMI and/or to give adequate opportunity to cure, as required by law. *See*, MCL 445.1527.

64. EMMI suffered damages from EWCF's violations of MCL 445.1501, et seq.

65. Additionally, where a franchisor seeks to enforce a provision prohibited by MCL 445.1527, there is a presumption of immediate and irreparable harm to the franchisee and no further showing is required for entry of a preliminary injunction. *See*, MCL 445.1535(3).

**COUNT IV:**
**<u>TORTIOUS INTERFERENCE</u>**

66. EMMI incorporates the foregoing allegations as if incorporated herein.

67. EMMI has valid business relationships with customers, employees, vendors, and its landlord.

68. EWCF knew of these relationships yet intentionally interfered with those relationships by disabling or threatening to disable the systems necessary to operate EMMI's business.

69. EWCF's conduct was improper and without justification and EMMI suffered damages as a result.

**COUNT V:**
**<u>INJUNCTIVE RELIEF</u>**

11

70.     EMMI incorporates the foregoing allegations as if incorporated herein.

71.     EWCF has unreasonably and without any proper basis refused to enter into a new franchise agreement for a Successor Franchise with EMMI.

72.     EWCF has also unreasonably and improperly terminated the West Bloomfield Store and threatens to do the same to the Canton Store on April 9, 2026.

73.     EWCF's refusal to perform its obligations under the Franchise Agreement as amended has caused and will continue to cause irreparable harm to EMMI.

74.     EMMI has a likelihood of success on the merits of its claim because EWCF's actions are unquestionably a breach of the Franchise Agreement as amended.

75.     EMMI is without any recourse at law to remedy EWCF's refusal to perform its obligations under the Franchise Agreement as amended.

76.     The public interest favors the entry of an injunction because EWCF's refusal to perform its obligations under the Franchise Agreement as amended unreasonably interferes with EMMI's ability to maintain a viable business.

77.     The balance of harms favors EMMI because EMMI is only asking this Court to direct EWCF to perform the very same activities it agreed to perform under the Franchise Agreement as amended.

78.     EMMI seeks judgment and injunctive relief as set forth below.

**REQUESTED RELIEF**

WHEREFORE, EWC Michigan Management, Inc. respectfully requests that this Honorable Court:

12

A. Enter a temporary restraining order, preliminary and/or permanent injunction injunctive relief enjoining Defendant from disabling all vendor services and accounts and/or disabling Plaintiff's access to Zenoti;

B. Enter judgment in Plaintiff's favor and against Defendant in an amount to which Plaintiff is entitled;

C. Award Plaintiff its attorneys' fees and costs; and

D. Award any other and further relief deemed just and appropriate.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

*/s/ Mark C. Vanneste*
By:      Mark C. Vanneste
450 W. 4th Street
Royal Oak, MI 48067
Dated: March 31, 2026              248-645-1483 | mv@h2law.com

13

## VERIFICATION OF COMPLAINT

I, Farzana Khan, as the sole shareholder of EWC Michigan Management, Inc. declare that the facts alleged in this Verified Complaint are true and accurate to the best of my knowledge, information, and belief.

By: Farzana Khan
Its: Shareholder

Subscribed and sworn to before me
This 31ˢᵗ day of March 2026.

Notary Public, Oakland County, MI
My Commission Expires: Jan 15, 2031
Acting in Oakland County

LUCAS RIBEIRO
NOTARY PUBLIC – STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires January 15, 2031
Acting In the County of Oakland

14